# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERTO NICANOR, on Behalf of Himself and All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>    v.<br><br>OCUGEN, INC., SHANKAR MUSUNURI and SANJAY SUBRAMANIAN,<br><br><br>                Defendants. | Case No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT
## FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Roberto Nicanor ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Ocugen, Inc. ("Ocugen" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons who purchased or otherwise acquired Ocugen securities between February 2, 2021, and June 10, 2021, inclusive (the "Class Period"), seeking to recover damages for violations of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

## JURISDICTION AND VENUE

2.       The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

4.     Venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff Roberto Nicanor purchased Ocugen securities within the Class Period and, as a result, was damaged thereby. Plaintiff's certifications evidencing his transactions is attached hereto as Exhibit A.

7.     Defendant Ocugen Corporation is a Delaware corporation with its principal executive offices located at 263 Great Valley Parkway, Malvern, Pennsylvania 19355. Ocugen common stock trades on the NasdaqGS under the ticker symbol "OCGN."

8.     Defendant Shankar Musunuri ("Musunuri") was the Company's Chief Executive Officer ("CEO"), Chairman and Co-Founder of Ocugen at all relevant times.

9.     Defendant Sanjay Subramanian ("Subramanian") was the Company's Chief Financial Officer ("CFO") and Principal Financial Officer at all relevant times.

10.    Defendants in Paragraphs 8-9 are collectively referred to herein as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the

highest levels;

(c) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e) was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f) approved or ratified these statements in violation of the federal securities laws.

15. Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Ocugen's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith

16. As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued

statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

17.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Ocugen's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

18.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Ocugen securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Ocugen's business, operations, management, and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Ocugen securities at artificially inflated prices.

**SUBSTANTIVE ALLEGATIONS**

**A.      Background**

12.      Ocugen identifies itself as a biopharmaceutical company focused on developing gene therapies to cure blindness and developing a vaccine to save lives from COVID-19. The company's main developments are a modifier gene therapy platform based on nuclear hormone receptors ("NHRs") to generate therapies for patient with inherited retinal diseases ("IRDs") and dry age-related macular degeneration ("AMD").

**B.      Material Misstatements and Omissions during the Class Period**

13.      The Class Period begins on February 2, 2021, when Ocugen issued a press release announcing an agreement with Bharat Biotech International Limited ("Bharat"), a biotechnology headquartered in Hyderabad, India. Pursuant to the agreement, Ocugen obtained an exclusive right and license under certain of Bharat's intellectual property rights, with the right to grant sublicenses, to develop, manufacture and commercialize COVAXIN™, an advanced stage whole-virion inactivated vaccine candidate/product for the prevention of COVID-19 in humans in the United States of America (the "February Press Release"). In the press release, the Company stated in relevant part:

> MALVERN, Pa. and HYDERABAD, India, Feb. 02, 2021 (GLOBE NEWSWIRE) -- Ocugen, Inc., (NASDAQ: OCGN), a biopharmaceutical company focused on discovering, developing, and commercializing gene therapies to cure blindness diseases and developing a vaccine to fight COVID-19, and Bharat Biotech, a global leader in vaccine innovation, today announced they have entered into a definitive agreement to co-develop, supply, and commercialize Bharat Biotech's COVAXIN™, an advanced stage whole-virion inactivated COVID-19 vaccine candidate, for the United States market.
>
> ***Under the terms of the agreement, Ocugen will have US rights to the vaccine candidate and will be responsible for clinical development, regulatory approval (including EUA) and commercialization for the US***

6

*market.* Bharat Biotech will supply initial doses to be used in the US upon Ocugen's receipt of an EUA. In addition, Bharat Biotech will support the technology transfer for manufacturing in the US. In consideration for the exclusive license to the US market, Ocugen will share the profits from the sale of COVAXIN™ in the US market with Bharat Biotech, with Ocugen retaining 45% of the profits.

Emphasis added.

14.     On this news, the Company's share price rocketed from a close of $1.81 per share of Ocugen stock on February 1, 2021, to close at $3.26 per share on February 2, 2021, an increase of approximately 80.1 percent.

15.     On February 5, 2021, after the market close, Ocugen filed a Form 8-K with the SEC (the "February Form 8-K"). Attached to the Form 8-K as exhibit 99.1 was an investor presentation regarding the Company's apparent new mission to "develop a vaccine to save lives from COVID-19". The presentation described in great detail the Covaxin vaccine characteristics, the "unmet need in the United States" and Ocugen's plan to develop and file an Emergency Use Authorization ("EUA") with the U.S. Food and Drug Administration ("FDA"). In pertinent part:



16.     On March 19, 2021, Ocugen filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2020 (the "2020 10-K"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. Therein, Ocugen stated in relevant part:

**OUR STRATEGY**

Our product candidates have the potential to save lives from COVID-19 and cure blindness diseases. We are committed to developing these product candidates and bringing them to market to serve patients in multiple disease areas. Key elements of the strategy we employ to accomplish this objective include:

•Advancing our COVID-19 vaccine product candidate towards EUA and commercialization in the United States. We have initiated discussions with the FDA regarding the development of COVAXIN. COVAXIN has been granted approval for emergency use in India. A Phase 3 clinical trial is ongoing in India. COVAXIN demonstrated a vaccine efficacy of 81% in the first interim analysis of the Phase 3 clinical trial. ***We intend to advance the development of COVAXIN towards EUA and ultimately BLA approval in the United States.***

\*\*\*

**COMPETITIVE STRENGTHS**

Our key competitive strengths include:

•Vaccine Expertise. Key members of our management team and key advisors possess proven expertise and a track record of success in vaccine development and commercialization. We have established a vaccine scientific advisory board composed of leading academic and industry experts with extensive experience in the vaccine field. ***We intend to utilize this collective experience to evaluate the clinical and regulatory path to EUA and commercialization of COVAXIN in the United States.***

Emphasis added.

17.     The statements in paragraph ¶13, 15 and 16 above were false and/or misleading as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) the information submitted to the FDA was insufficient to support an EUA, (ii) Ocugen would not file an Emergency Use Authorization with the FDA, (iii) as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Ocugen's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**C.     The Truth Emerges**

18.     On June 10, 2021, Ocugen issued a press release announcing that it would pursue a "biologics license application" ("BLA") with the FDA instead of the previously announced EUA (the "June 2021 Press Release"). The press release stated in pertinent part:

> **Ocugen to pursue a BLA path in the US for its COVID-19 vaccine candidate**
>
> •*Company intends to work with the FDA towards filing a Biologics License Application (BLA) in the US*
>
> •*Company to engage with Health Canada to seek authorization under Interim Order for use in Canada*
>
> MALVERN, PA, June 10, 2021 — Ocugen, Inc. (NASDAQ: OCGN) (Company), a biopharmaceutical company focused on discovering, developing, and commercializing gene therapies to cure blindness diseases and developing a vaccine to save lives from COVID-19, today announced that upon recommendation from the U.S. Food and Drug Administration (FDA), it will pursue submission of a biologics license application (BLA) for its COVID-19 vaccine candidate, COVAXIN™. The Company will no longer pursue an Emergency Use Authorization (EUA) for COVAXIN™.
>
> ***The FDA provided feedback to Ocugen regarding the Master File the Company had previously submitted and recommended that Ocugen pursue a BLA submission instead of an EUA application for its vaccine candidate and requested additional information and data. Ocugen is in discussions with the FDA to understand the additional information required to support a BLA submission. The Company anticipates that data from an additional clinical trial will be required to support the submission.***
>
> "Although we were close to finalizing our EUA application for submission, we received a recommendation from the FDA to pursue a BLA path. While this will extend our timelines, we are committed to bringing COVAXIN™ to the US. This differentiated vaccine is a critical tool to include in our national arsenal given its potential to address the SARS-CoV-2 variants, including the delta variant, and given the unknowns about what will be needed to protect US population in the long term," said Dr. Shankar Musunuri, Chairman of the Board, Chief Executive Officer, and Co-founder of Ocugen.
>
> Ocugen recently announced that it secured exclusive rights to commercialize COVAXIN™ in Canada and has initiated discussions with Health Canada for regulatory approval. The Company will pursue expedited authorization for COVAXIN™ under the *Interim Order Respecting the Importation, Sale and Advertising of Drugs for Use in Relation to COVID-19* in Canada.

"In clinical trials to date, the emerging safety profile of COVAXIN™ is supportive of it being generally well tolerated with a good safety profile, with Ministry of Health and Family Welfare of Republic of India reporting no potential thromboembolic events following the administration of over 6.7 million doses of COVAXIN™ in that country," said Dr. Bruce Forrest, Acting Chief Medical Officer and member of the vaccine scientific advisory board of Ocugen.

Emphasis added.

19.     On the release of the news, the Company's share price declined from $9.31 per share of Ocugen stock on June 9, 2021, to close at $6.69 per share on June 10, 2021, *a drop of approximately -28.14 percent*.

## SCIENTER ALLEGATIONS

20.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Ocugen, their control over, and/or receipt and/or modification of Ocugen's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ocugen, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

21.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Ocugen's misconduct and its lack of operational and financial controls was

revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Ocugen's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

22.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Ocugen's business, operations, and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Ocugen's securities to be artificially inflated. Plaintiff and other Class members purchased Ocugen's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

**PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET**

23.     At all relevant times, the market for Ocugen's securities was an efficient market for the following reasons, among others:

(a)      Ocugen's common stock met the requirements for listing and was listed and actively traded on the NasdaqGS, a highly efficient and automated market;

(b)      Ocugen communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)      Ocugen was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)      Unexpected material news about Ocugen was reflected in and incorporated into the Company's stock price during the Class Period.

24.      As a result of the foregoing, the market for Ocugen's securities promptly digested current information regarding Ocugen from all publicly available sources and reflected such information in Ocugen's stock price. Under these circumstances, all purchasers of Ocugen's securities during the Class Period suffered similar injury through their purchase of Ocugen's securities at artificially inflated prices, and a presumption of reliance applies.

25.      Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense

that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## NO SAFE HARBOR; INAPPLICABILITY OF THE BESPEAKS CAUTION DOCTRINE

26. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

27. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

28. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Ocugen who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## <u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>

29.     Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Ocugen securities on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors, or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

30.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Ocugen securities were actively traded on the NasdaqGS.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Ocugen or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.  As of April 30, 2021, Ocugen had 198,228,533 outstanding shares of common stock.  Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

32.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b) whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c) whether the price of Ocugen securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder Against All Defendants

35. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Ocugen securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, each of the Defendants took the actions set forth herein.

37. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ocugen securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

38. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations, and future prospects of Ocugen as specified herein.

39. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ocugen's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Ocugen and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly

herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Ocugen securities during the Class Period.

40.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

41.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ocugen's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

42. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Ocugen's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Ocugen's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ocugen's securities during the Class Period at artificially high prices and were or will be damaged thereby.

43. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Ocugen's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ocugen securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

44. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

45. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**Violations of Section 20(a) of the Exchange Act Against the Individual Defendants**

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     Subramanian and Musunuri acted as controlling persons of Ocugen within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public Subramanian and Musunuri had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Subramanian and Musunuri were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

48.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

49.     As set forth above, Ocugen, Subramanian, and Musunuri each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

50. By virtue of their positions as controlling persons, Subramanian and Musunuri are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

51. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: June 17, 2021

**PRIBANIC & PRIBANIC**

*Vincent A. Coppola*
Vincent A. Coppola
513 Court Place
Pittsburg, PA 15219
Tel: (412) 281-8844
Fax: (412) 281-4740
Email: vcoppola@pribanic.com

**LEVI & KORSINSKY LLP**
Eduard Korsinsky (*pro hac vice* forthcoming)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com

*Attorneys for Plaintiff*